ISAACS FRIEDBERG & LABATON LLP
Amanda R. Touchton (SBN 220430)
555 South Flower, Ste. 4250
Los Angeles, California  90017
Telephone: (213) 929-5542
Facsimile:  (213) 966-5794
atouchton@iflcounsel.com

Attorneys for Defendant
Kiyoshiro Yamamoto

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>    vs.<br><br>KIYOSHIRO YAMAMOTO,<br><br>     Defendant. | Case No. CR 13-CR-00067<br><br>**DEFENDANT KIYOSHIRO YAMAMOTO'S SENTENCING POSITION; DECLARATION OF AMANDA TOUCHTON**<br><br>**[Exhibits 1 -29 Filed Concurrently Herewith]**<br><br>Date:    May 18, 2015<br>Time:    8:30 a.m. |

Defendant Kiyoshiro Yamamoto ("Mr. Yamamoto"), by and through his counsel of record, hereby submits his Sentencing Position in the above-captioned matter.

Dated: April 31, 2015          ISAACS FRIEDBERG & LABATON


By:   /S _____
      Amanda R. Touchton
      Attorneys for Kiyoshiro Yamamoto

130449.2

# **TABLE OF CONTENTS**

**PAGE**

I.     **INTRODUCTION.** ............................................................................... 1

II.    **GUIDELINE CALCULATION** ........................................................ 2

III.   **OBJECTION TO RECOMMENDATION LETTER** ...................... 3

IV.   **APPLICABLE DEPARTURES.** ...................................................... 4

     A.    Mr. Yamamoto Provided Substantial Assistance to the Government. ...................... 4

     B.    Mr. Yamamoto Was a Minor Participant. ................................................ 5

         1.    *Mr. Yamamoto Was a Minor Player in the Overall*
             *Whale Meat Importation and Sale Scheme.* ................................. 6

         2.    *Mr. Yamamoto's Role Was Minor Compared to His*
             *Co-Conspirators.* ................................................................. 6

V.    **MR. YAMAMOTO REQUESTS A VARIANCE.** ............................ 8

     A.    Nature and Circumstances of the Offense. ................................................ 8

     B.    Personal History and Characteristics of Mr. Yamamoto ............................ 9

         1.    *Mr. Yamamoto's Background.* ............................................... 9

         2.    *Mr. Yamamoto Is the Foundation of Yamakase.* ........................ 10

         3.    *Mr. Yamamoto Is a Hard Working and Talented*
             *Sushi Chef and a Generous Employer.* ..................................... 11

         4.    *Mr. Yamamoto Contributes to His Community.* ......................... 12

         5.    *Mr. Yamamoto Is Well Known For His Kindness and Generosity.* ............ 13

         6.    *The Instant Offense Is Out-Of-Character for Mr. Yamamoto.* ............ 15

     C.    Need to Avoid Unwarranted Sentencing Disparities. ............................... 16

     D.    A Sentence of Probation Is Sufficient to Achieve the Goals of Sentencing. ........ 17

VI.   **CONCLUSION.** ............................................................................. 18

i

130449.2

1

# TABLE OF AUTHORITIES

2 **CASES**                                                                **PAGE(S)**

3 **FEDERAL CASES**

4 United States v. Booker,
   543 U.S. 220, 245-46 (2005) ..................................................................10

5 *Roberts v. United States,*
6   445 U.S. 552 (1980).............................................................................5

7 *United States v. Booker,*
   543 U.S. 220 (2005)............................................................................5, 8
8

9 *United States v. Conatser,*
   514 F. 3d 508 (6th Cir. 2008) ...............................................................16

10 *United States v. Demers,*
    13 F.3d 1381 (9th Cir. 1994) ..................................................................8
11

12 *United States v. Frias,*
    521 F.3d 229 (2nd Cir. 2008) ................................................................16

13 *United States v. Hatley,*
    15 F.3d 856 (9th Cir. 1994) ....................................................................5
14

15 *United States v. Lazenby,*
    439 F.3d 928 (8th Cir. 2006) ............................................................5, 16

16 *United States v. Rojas-Millan,*
    234 F.3d 464 (9th Cir. 2000) ..................................................................6
17

**STATUTES**
18
16 U.S.C. § 1372..........................................................................................2
19
16 U.S.C. § 1375..........................................................................................2
20
18 U.S.C. § 2................................................................................................2
21
18 U.S.C. § 371............................................................................................2
22
18 U.S.C. § 3582..........................................................................................8
23
18 U.S.C. § 3553.............................................................................3, 5, 8, 16, 17
24
18 U.S.C. § 3661..........................................................................................8
25
18 U.S.C. section 2(b)..................................................................................4
26

**UNITED STATES SENTENCING GUIDELINES**
27
U.S.S.G § 1B1.3 .......................................................................................5, 6
28
U.S.S.G § 2Q2.1 .........................................................................................2

ii

130449.2

1
2

## **<u>TABLE OF AUTHORITIES (Cont.)</u>**

3

**PAGE(S)**

4

U.S.S.G. § 3B1.2 ................................................................................3, 5

5

U.S.S.G. § 3E1.1................................................................................2

6

U.S.S.G. § 5K1.1 ................................................................................5

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Mr. Yamamoto is a fifty-year old sushi chef and small business owner.  The charges against Mr. Yamamoto stem from his 2010 employment as a sushi chef for the Typhoon Restaurant dba the Hump (the "Hump") in Santa Monica.  The Hump marketed itself on the basis of its exotic and rare menu items. One of the exotic specialties the Hump sold was whale meat.  The Hump purchased and sold whale meat prior to Mr. Yamamoto's employment.  Mr. Yamamoto, a $15 an hour employee, did not initiate the sale of whale meat and never profited it.

Mr. Yamamoto's conduct is his deepest regret and the source of his greatest shame.  He has fully accepted responsibility for his role in the offense and cooperated extensively with the government.  Since he began cooperating, two more culpable defendants, the Typhoon Restaurant and its owner, Brian Vidor, have pled guilty.

Mr. Yamamoto's involvement in the offense ended over five years ago.  Since then, he has worked incredibly hard to open and operate a small restaurant in West Los Angeles, in which he is a minority owner.  Mr. Yamamoto works twelve to sixteen hours a day with no vacation.  He is the sole sushi chef.  To his restaurant, Yamakase, Mr. Yamamoto is indispensable.

As discussed below, Mr. Yamamoto requests that the Court grant him a departure under section 5K1.1 of at least two-levels for his cooperation with the government and a two-level departure for minor role, to arrive at an offense level of six.  Should the Court decline to grant a departure, Mr. Yamamoto requests a variance of the same amount based on the factors in 18 U.S.C. section 3553(a).

Based on a final offense level of six, Mr. Yamamoto requests that the Court sentence him to one year of probation and 200 hours of community service and impose a $5,000 fine.

## II.    GUIDELINE CALCULATION

Mr. Yamamoto pled guilty to one misdemeanor count of conspiracy for offering to sell and selling whale meat in violation of Title 18 U.S.C. section 371 and two misdemeanor counts of offering to sell and sell whale meat in violating 16 U.S.C. sections 1372(a)(4)(B) and 1375(b) and 18 U.S.C. section 2(b).  The base offense level is six.  (U.S.S.G. § 2Q2.1(a); PSR ¶ 37.)  Mr. Yamamoto stipulated to a two-level enhancement for commercial purpose.  (U.S.S.G. § 2Q2.1(b)(1)(A); PSR, ¶ 38; Plea Agreement, ¶ 15.)  Mr. Yamamoto further stipulated to a four-level enhancement for sale of an endangered species.  (U.S.S.G. § 2Q2.1(b)(3)(b).) Mr. Yamamoto's total offense level is 12.

The probation officer has recommended, and the government has agreed to recommend, a two-level reduction for acceptance of responsibility.  (U.S.S.G. § 3E1.1(a); PSR, ¶ 48; Plea Agreement 5(d).)  Mr. Yamamoto's offense level, as recommended by the probation officer and contained in his plea agreement is level 10.

Mr. Yamamoto is in criminal history category I.  (PSR, ¶ 57.)

Based on these Guideline calculations, Mr. Yamamoto's offense level is 10 and his recommended guideline sentence is 6 to 12 months in custody.  (PSR, ¶ 95.) The minimum term may be served by a sentence of probation that substitutes intermittent confinement, community confinement or home detention for imprisonment.  (*Id*.)

The probation officer has recommended a variance from this guideline range based on the nature and circumstances of the offense and the history and characteristics of Mr. Yamamoto.  (PSR, ¶ 111.)  Thus, the probation officer recommended a sentence of two years of probation with various conditions. (Recommendation Letter, pgs. 1-2.)

Mr. Yamamoto requests that the Court apply a two-level departure for cooperation pursuant to 5K1.1 and a two-level reduction for minor role pursuant to

2

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

U.S.S.G. § 3B1.2(b).  Should the Court decline to adopt these departures, Mr. Yamamoto requests a corresponding variance based on the factors set forth in 18 U.S.C. § 3553(a).  Thus, Mr. Yamamoto requests the following Guideline calculation:

| | | |
|---|---|---|
| Base Offense Level: | 6 | (U.S.S.G. § 2Q2.1(a)) |
| Commercial Purpose: | +2 | (U.S.S.G. § 2Q2.1(b)(1)(A) |
| Endangered Species | +4 | (U.S.S.G § 2Q2.1(b)(3)(B) |
| Acceptance | -2 | (U.S.S.G. § 3E1.1(a)) |
| Cooperation | -2 | (U.S.S.G. § 5K1.1) |
| Role in Offense | -2 | (U.S.S.G § 3B1.2(b)) |
| Total Offense Level: | 6 | |

Based on these proposed Guideline calculations, Mr. Yamamoto respectfully requests that the Court sentence him to 12 months of probation, 200 hours of community service and impose a $5,000 fine.

## III.   OBJECTION TO RECOMMENDATION LETTER

Mr. Yamamoto objects to the probation officer's recommendation that the Court order alcohol testing.  (Recommendation Letter, p. 2.)  Mr. Yamamoto's charges are neither directly nor indirectly related to alcohol.  The probation officer relied on fifteen year old convictions for driving under the influence and the fact that Mr. Yamamoto had bottles of different types of alcohol in his home as the basis for this recommendation.  (PSR, ¶ 71, Recommendation Letter, p. 4.)  The probation officer did not understand that the alcohol in his home was intended for restaurant patrons, not Mr. Yamamoto's personal consumption.

Mr. Yamamoto lives a modest lifestyle in a "small one bedroom apartment" that is "moderately maintained and did not appear to have expensive furnishings." (PSR, ¶ 71.)  The presence of the alcohol on the table by the door is more reflective of Mr. Yamamoto's smaller living space and his lack of an expensive alcohol cabinets than an alcohol problem.  Many people keep far greater quantities alcohol

than was observed by the probation officer in Mr. Yamamoto's home, but have the luxury of storing it out-of-sight.

Yamakasa is a small restaurant, with seating for 11 customers. Yamakase's intimate environment is one of its main selling points. Mr. Yamamoto interacts personally with all of the customers, who often spend three to four hours eating up to twenty-five small courses. As is traditional and expected, Mr. Yamamoto frequently shares a drink with his customers. Imposing the probation officer's alcohol testing condition is unnecessary and unwarranted under these facts and would unduly impose, not only on Mr. Yamamoto personally, but on his business.

Thus, Mr. Yamamoto objects to the recommended alcohol testing condition and requests that the Court decline to impose it.

## IV.   APPLICABLE DEPARTURES

### A.   Mr. Yamamoto Provided Substantial Assistance to the Government.

Mr. Yamamoto cooperated extensively with the government. On September 26, 2013, before he entered into the Plea Agreement in this matter, he attended a multi-hour proffer session with the government attorney and agents. (Declaration of Amanda Touchton, ¶ 2.) Subsequent to his Plea, on February 27, 2014, Mr. Yamamoto attended a second, multi-hour proffer session with the government attorney and agents. (*Id*. at ¶ 3.)

At his multiple proffer sessions, Mr. Yamamoto provided extensive information about other more culpable participants, such as Mr. Vidor, Mr. Schaefer and The Hump. (Touchton Decl., ¶ 4.) He was also very forthcoming about his own involvement and his own participation. (*Id*.) Subsequent to Mr. Yamamoto's cooperation, both Mr. Vidor and The Hump entered guilty pleas.

Mr. Yamamoto is hopeful that the government will recommend a two-level reduction for his substantial assistance, which assisted in the prosecution of two more culpable participants in the conspiracy.

Mr. Yamamoto's efforts to cooperate were extensive and offered in good faith and reflect his efforts to accept responsibility and atone for his wrongdoing. *Roberts v. United States*, 445 U.S. 552, 558 (1980) (holding that few facts are more relevant to a sentencing judge's determination that a defendant will not reoffend and that he will respond with efforts at rehabilitation than his willingness to cooperate). The Court can consider Mr. Yamamoto's cooperation when considering the history and characteristics of the defendant under 18 U.S.C. 3553(a). *United States v. Lazenby*, 439 F.3d 928, 933-34 (8th Cir. 2006) (holding that, under *Booker*, a prosecutor's evaluation of the defendant's cooperation, although still important, is not controlling). Thus, if the Government declines to request a departure, Mr. Yamamoto requests that the Court consider his cooperation in granting him the variance requested below.

**B.     Mr. Yamamoto Was a Minor Participant.**

Guideline section 3B1.2(b) authorizes a two-level reduction for defendants who had a minor role in the overall offense. Under Section 3B1.2, a defendant qualifies for a downward role adjustment where he is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). A defendant is a "minor participant" if he "is less culpable than most other participants, but his role could not be described as minimal." (*Id.* at n. 5.) "In determining whether a defendant was a minimal or a minor participant in any criminal activity, a district court . . . shall consider all conduct within the scope of § 1B1.3 (Relevant Conduct), not just conduct cited in the count of conviction." *United States v. Hatley*, 15 F.3d 856, 859 (9th Cir. 1994); *United States v. Demers*, 13 F.3d 1381, 1383 (9th Cir. 1994) ("[a]ll relevant conduct within the meaning of § 1B1.3 may serve as the predicate for a downward adjustment").

A defendant's conduct is evaluated in light of the conduct of his co-participants in the "overall criminal scheme," including unindicted co-conspirators. *United States v. Rojas-Millan*, 234 F.3d 464, 473 (9th Cir. 2000) (considering the

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

unindicted supplier and distributer in determining whether a drug courier was eligible for a minor role reduction).

### 1.    *Mr. Yamamoto Was a Minor Player in the Overall Whale Meat Importation and Sale Scheme.*

The overall whale meat importation and sale scheme involves far more individuals than are before this Court.  First, there are the people who hunted and harvested the whales in Japan.  Then there is a "fish supplier in Japan," who sold it to importers, such as Ginichi Ohira.  (PSR, 18.)  Ohira then imported the meat and made false statements to customs officials in order to do so.

Once Ohira had the meat in the United States, he sold it to restaurants, such as the Hump.  Its purchase was approved by management and paid for by the restaurant.  It was then prepared for sale by chefs such as Mr. Yamamoto.  Next to the waitress who carried the meat to the table, Mr. Yamamoto is the most minor participant in the entire importation and sale scheme.

### 2.    *Mr. Yamamoto's Role Was Minor Compared to His Co-Conspirators.*

Even within the smaller conspiracy of buying and selling meat at the Hump, Mr. Yamamoto was a minor player.

The whale meat was imported and sold by Mr. Ginichi Ohira.  *See United States v. Ohira*, Central District of California Case No. 11-CR-0223.  The Hump purchased the meat.  *See United States v. Typhoon Restaurant, Inc.*, Central District of California Case No. 13-CR-067-DSF.  The Hump was owned by Brain Vidor, who the probation officer recognizes as the most culpable participant.  (PSR, ¶ 43; s*ee United States v. Brian Vidor,* Central District of California Case No. 14-CR-0629.)  At the time the whale meat in the Information was purchased, Chris Schaefer was the manager.  The sushi chefs, such as Mr. Yamamoto and Mr. Ueda, had to receive authorization from Mr. Schaefer who, in turn, had to receive authorization from Mr. Vidor.  Mr. Schaefer has not been charged.  During the periods charged in the Information, Mr. Susumo Ueda, Mr. Yamamoto's co-defendant, was the head

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

sushi chef and Mr. Ueda actually placed the order for the whale meat sales charged in the Information.  (PSR, ¶ 15.)

The Hump "specialized in exotic sea food items."  (Typhoon Plea Agreement, ¶ 11.)  Sushi chefs, such as Mr. Ueda and Mr. Yamamoto were expected to prepare a menu that included promoted exotic items.  When Mr. Yamamoto began working at The Hump, the restaurant was already serving whale meat.  (*See* Vidor Plea Agreement, ¶ 10, admitting that whale meat was sold at Hump as early as 2005.)

In 2007, Mr. Ueda was the head sushi chef.  (PSR, ¶ 18.)  "Ueda, in his capacity as head sushi chef of The Hump, sought approval from Schaefer, who was the then manager of The Hump, to order several pounds of whale meat from co-conspirator Ohira.  Schaefer, in turn, sought approval for the order of whale meat from Vidor, who owned The Hump."  (Plea Agreement, ¶ 13.)  Mr. Yamamoto acknowledges that he and Mr. Ueda both agreed to ask for the whale meat.  (PSR, ¶ 18, fn.1.)

The Hump, with its "exotic" menu instigated the offense.  Mr. Yamamoto and Mr. Ueda, mere employees, were required to comply with the practices of The Hump.  That they, as chefs, placed orders suggests far more responsibility than either of them had.  Mr. Ueda did not have the independent authority to order whale meat.  The authority was given by the manager, Mr. Schaefer, and confirmed by the owner, Mr. Vidor.  (PSR, ¶ 18.)

The meat was stored in Mr. Vidor's private airplane hangar and was inaccessible to both Mr. Ueda (the head sushi chef) and Mr. Yamamoto (a line sushi chef).  (PSR, ¶ 21.)  Mr. Schaefer or Mr. Vidor had to bring the meat to the restaurant when the supply was low.  Mr. Schaefer weighed and inventoried the meat.

Mr. Yamamoto was a $15 an hour employee who did not benefit from The Hump's illegal activities.  Instead, he was complicit in and complied with the on-going practices of his employers, The Hump and Mr. Vidor.  He has, therefore,

7

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

accepted responsibility for his complicity in the offense.  Under the Guidelines, however, he is entitled to recognition for this minor role and, therefore, requests a two-level departure.

### V.   MR. YAMAMOTO REQUESTS A VARIANCE

In determining Mr. Yamamoto's sentence, the Court will consider a broad range of sentencing purposes, along with the advisory United States Sentencing Guidelines.  *United States v. Booker*, 543 U.S. 220, 245-46 (2005).  These statutory purposes are delineated in 18 U.S.C. §§ 3553(a), 3582(a) and 3661.  The Court will impose a sentence sufficient, but not greater than necessary, to achieve the goals of sentencing.  *See* 18 U.S.C. § 3553(a).  In fashioning an appropriate sentence, the Court will evaluate a myriad of factors in relation to the facts of the case.  *See* 18 U.S.C. § 3553(a)(1)-(7).  Several of these factors – set within the context of Mr. Yamamoto's case – are discussed below.

Mr. Yamamoto requests that, to the extent the Court declines to grant him a departure to recognize his minor role and that the government declines to offer him a departure under 5K1.1, that the Court grant him a four-level variance to take into consideration the factors set forth in 18 U.S.C. section 3553(a).

### A.   Nature and Circumstances of the Offense.

Key mitigating facts related to the offense are discussed in detail above. Primarily, Mr. Yamamoto was a minor player.  He was an hourly employee of a restaurant that marketed itself on its sale of "exotic" foods.  Critically, the restaurant was already selling whale meat when Mr. Yamamoto began working there.

Mr. Yamamoto was also not in a position of authority or responsibility when the meat was purchased.  Mr. Ueda was the head sushi chef, Mr. Schaefer was the manager and Mr. Vidor was the business owner.  Mr. Yamamoto was nothing more than a line cook.

When Mr. Yamamoto became the head sushi chef, he was pressured by Mr. Schaefer, the manager, to sell the whale meat.  (PSR, ¶ 31.)  Mr. Ueda had ordered a

substantial amount and Mr. Schaefer charged Mr. Yamamoto with reducing the inventory.  He told Mr. Yamamoto he would be fired or demoted if he did not sell it. (*Id.*)

Mr. Yamamoto never denied his participation in the offense.  On March 5, 2010, law enforcement executed a search warrant on the premises of The Hump.  (PSR, ¶ 25.)  At that time, Mr. Yamamoto gave a full interview to the agents in which he acknowledged that he had sold whale meat to Hump customers in the past.  (*Id.* ¶ 29.)  He did not tell agents where the Hump had purchased the whale meat, because he was afraid to implicate others.  (Id., ¶ 31.)  The government, however, was already well aware of Mr. Ohira's involvement; he was their primary cooperating witness.

The nature and circumstances of the offense, therefore, reveal that Mr. Yamamoto was a minor player who acknowledged his role and accepted responsibility for his conduct during his first encounter with law enforcement.

**B.     Personal History and Characteristics of Mr. Yamamoto.**

The 29 attached character reference letters submitted herewith all attest to Mr. Yamamoto's "good character, honesty, kindness and strong work ethic."[1]  (PSR, ¶ 72.)  In the past few years, Mr. Yamamoto has been absolutely dedicated to starting his own small restaurant, Yamakase.  As the probation officer reports, "Mr. Yamamoto appears to be a talented, hardworking and popular sushi chef." (Recommendation Letter, p. 4.)  Mr. Yamamoto has also "donated his time and money to various charitable organizations or events."  (*Id.*)

***1.     Mr. Yamamoto's Background.***

Mr. Yamamoto was born and raised in Tokyo, Japan.  (PSR, ¶ 64.)  During Mr. Yamamoto's childhood, it was commonplace to eat whale meat, and, in fact, it

---

[1] The letters are addressed to the Honorable Audrey B. Collins, who was the judge presiding over this matter at the time the letters were requested.

9

1   was a staple in school lunches.  (Id., ¶ 31.)  Given this cultural background,

2   Mr. Yamamoto did not recognize the seriousness of the conduct.  (PSR, ¶ 31.)

3        When Mr. Yamamoto first found out that The Hump was selling whale meat,

4   he did not understand that it was illegal.  He though the Hump's secretive behavior

5   was out of a concern over animal rights activists.  He did come to learn that it was

6   illegal, but he did not comprehend the gravity of the crime until he was indicted in

7   this case.

8        Although he asks the Court to consider his cultural background in fashioning

9   its sentence, he "acknowledge[s] that his background is not an excuse for his

10  conduct in the instant matter."  (PSR, ¶ 31.)

11       ***2.    Mr. Yamamoto Is the Foundation of Yamakase.***

12       In 2011, Mr. Yamamoto became the sole sushi chef, chief operator, manager

13  and minority owner in Yamakase, a small restaurant on the Westside of Los

14  Angeles.  Stan Liu, President of Atomic Bullfrog, LLC and the majority owner of

15  Yamakase, described in his letter to the Court how he became involved with

16  Yamakase.  (Exhibit 17, Ltr. from S. Liu.)  "Three years ago, I had the single

17  privilege of fully funding Kiyoshiro and opened Yamakase restaurant in Los

18  Angeles . . . Lately I get asked the question why on earth would I ever invest in a

19  restaurant.  My answer has always been that I am not investing in a restaurant; I am

20  investing in Kiyoshiro Yamamoto."  (*Id.*)   Mr. Liu continues, "[f]or the past three

21  years, Kiyoshiro managed to take the idea of Yamakase and turn it into a successful

22  and highly respectable restaurant through sheer hard work and dedication.  I have

23  never seen him cut corners along the way or compromise his art for the sake for

24  making a few extra dollars for notoriety."  (*Id.*)

25       Mr. Yamamoto is, therefore, more than the part-owner, manager and sole

26  sushi chef for Yamakase.  He is the lifeblood of the restaurant.  "Kiyoshiro is the

27  foundation of Yamakase," writes owner Stan Liu.  "Being the only chef and

28  manager, he is fully responsible for the daily operations of the restaurant.  He

10

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

manages purchasing, inventory, quality control, reservations, profit and loss, as well as the staff and the menu.  Most importantly, it is Kiyoshiro and his skill as a brilliant chef that brings customers in the door."  (Exhibit 17, Ltr. from S. Liu.)

Critically, if Mr. Yamamoto were to be incarcerated, Yamakase could not stay open and employees would lose their jobs.  "If Kiyoshiro were incarcerated, even for a short time, I would not be able to keep the restaurant operational," writes Mr. Liu.  (Exhibit 17, Ltr. from S. Liu.)  "There are presently four employees who depend upon Yamakase to support themselves and their families.  If Kiyoshiro were incarcerated all of these persons would be without employment . . . He is the business."  (*Id.*)

### 3.   Mr. Yamamoto Is a Hard Working and Talented Sushi Chef and a Generous Employer.

Mr. Kevin Bachus a longtime customer and friend of Yamamoto describes meeting Mr. Yamamoto as follows: "I first met Mr. Yamamoto nearly 10 years ago when he was working as a chef and I visited his restaurant for the first time.  I was immediately struck by two things: his incredible attention to detail and artistry in his craft and his remarkably outgoing and friendly personality."  (Exhibit 1, Ltr. from M. Bachus.)  "I still yearn for his Seared Toro and the Yuzu Soebeit," writes Mitsuaki Murashge.  (Exhibit 18, Ltr. from M. Murashige.)

In his current restaurant, Mr. Yamamoto does more than prepare delicious food.  "I have also found Mr. Yamamoto to be a passionate and tireless educator when it comes to demonstrating and sharing regarding his craft, his upbringing in Japan, and the culture of his native county," writes Mr. Bachus.  (Exhibit 1, Ltr. from Mr. Bachus.)  "He is generous with his talents and time," writes Ms. Chrisa Johnson, "and he humbly puts others before himself."  (Exhibit 9, Ltr. from C. Johnson.)

Mr. Yamamoto is also a thoughtful and considerate employer.  Ms. Chrisa Johnson, one of the servers at Yamakase, writes: "I am an employee at Yamakase

and also a graduate student at Alliant International University . . . . One trait that I especially appreciate is his kindness . . . .  Mr. Yamamoto encourages me to preserve . . .  and offers to make adjustments to my schedule to accommodate my school schedule."  (Exhibit 9, Ltr. from C. Johnson;  *see also* Exhibit 10, Ltr. from T. Johnson, Ms. Johnson's husband ("Mr. Yamamoto accommodates [Chrisa Johnson's] needs as a full-time student with a long commute and balances her personal and family needs with his business and her responsibilities in it.").)

"He teaches me a lot about foods and drinks for gaining knowledge," writes employee Kaoru Phillips.  "Also he cares about me more than just an employee.  He gives me a ride when it's a rainy day, asks me how I'm doing and sometimes takes me out for dinner."  (Exhibit 22, Ltr. from K. Phillips.)

David Rayon, another Yamakase employee, speaks extremely highly of Mr. Yamamoto.  "Anytime he noticed that I needed help with something, he took time to teach them and demonstrated in front of me until I understood.  This is very helpful. He also taught himself Spanish so he could communicate with me, because my primary language is Spanish . . . .  He offers to adjust my hours at Yamakase for my other work schedule whenever I need it . . . he give some food for my family and a jacket when it gets cold.  He always thinks about what is best for my family and me."  (Exhibit 23, Ltr. from D. Rayon.)

### 4.      Mr. Yamamoto Contributes to His Community.

To his community, Mr. Yamamoto contributes his skills and his time to help where he can.  As a local business owner, he has become very active in the Motor Avenue Improvement Association.  The director of the organization writes to the Court as follows: "Mr. Yamamoto has extended his enthusiasm for our community efforts by contributing wherever possible.  He has generously donated his time and other resources, including electricity from his restaurant to our new Farmers Market on National Boulevard to help get it off the ground . . . . After getting to know him over these past two years I've found that he truly encompasses all the best qualities

12

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

that should define a community and a team member."  (Exhibit 27, Ltr. from L. Wallach.)

The Branch Chief of the International Karate Organization, Mr. Takashi Hasegawa, who owns a dojo near Mr. Yamamoto's business describes how Mr. Yamamoto "brought big trays of sushi rolls and refused to take money" to one the parties he held for his students.  (Exhibit 4, Ltr. from T. Hasegawa; *see also* Exhibit 28, Ltr. from M. Wanatabe ("For many years, Mr. Yamamoto donates and served food to my son's karate dojo.  This was an act of charity and kindness that he was not asked to do and was not compensated for it.").)

He also generously continued to act as a chef for a fundraiser dinner for a foundation dedicated to providing food to impoverished children.  "With Mr. Yamamoto's effort," writes Liz Lee, "we were able to raise enough funds to meet our budget for our project in Peru where we provided food for Quechuan community based in the very remote, mountainous region of the Peruvian Andes." (Exhibit 19, Ltr. from L. Lee.)

### 5.   *Mr. Yamamoto Is Well Known For His Kindness and Generosity.*

As the twenty-nine attached letters reflect, Mr. Yamamoto is a generous and kind individual.  Mr. Kevin Bachus, Senior Vice President at Dave & Busters and Mr. Yamamoto's longtime friend, writes to the Court as follows: "Mr. Yamamoto has always demonstrated to me personally the greatest virtues of kindness and consideration."  (Exhibit 1, Ltr. from K. Bachus.)  Another friend describes Mr. Yamamoto in similar terms, writing to the Court: "Throughout the years, I have known him to be honest, civic minded and law abiding, as well as being one of the nicest people I have ever had the pleasure of meeting."  (Exhibit 2, Ltr. from R. Bajorek.)

"I think he has a great personal magnetism," writes Mr. Yoshihito Hasegawa, "he is always gentle, warm and makes everyone laugh as he jokes."  (Exhibit 5, Ltr. from Y. Hasegawa.)  "Mr. Yamamoto is a good friend of mine, possessing kind,

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

honest and engaging human qualities required for a lasting personal friendship," writes Paul Liyama, Senior Vice President of JFC International Inc.  (Exhibit 6, Ltr. from P. Liyama.)  "He is a sincere and kind individual," writes Mr. Victor Paz. (Exhibit 21, Ltr. from V. Paz.)  "Mr. Yamamoto is a good communicator and generous with others," writes Mr. Hirotoshi Komatsu, a restaurant owner and chef. "He has a strong sense of duty, which applies in his job, friendships and community."  (Exhibit 14, Ltr. from H. Komatsu.")  "My impression of Kiyoshiro Yamamoto," echoes Mr. Michael Wilson, "is that he is hard working, trustworthy, sensitive, kind, funny and is an optimist."  (Exhibit 29, Ltr. from M. Wilson.)

Before he was an owner and manager, Mr. Yamamoto was a kind and considerate co-worker.  "Mr. Yamamoto has always helped his co-workers in any possible ways," writes Mr. Nobi Kasuhara, Mr. Yamamoto's former employer, "He has dedicated many hours training and supervising the other chefs."  (Exhibit 15, Ltr. from N. Kusuhara.)  "Mr. Yamamoto taught me so much," writes Akira Sato, one of Mr. Yamamoto's former coworkers.  "Mr. Yamamoto is my mentor and friend who has helped me grow to the man that I am today."  (Exhibit 25, Ltr. from A. Sato.)

Mr. Yamamoto cares deeply for the people around him and takes the extra step to offer help where he can.  A friend describes how Mr. Yamamoto was "kind and generous to [his] wife as she transitioned to her new life in the United States. As someone who has come to a new world and started from scratch, he has been empathetic and has provided practical guidance to her as she has adjusted to the challenges and differences that living in a new country entail."  (Exhibit 3, Ltr. from R. Chutupe.)

Another friend describes how Mr. Yamamoto went out of his way to help him establish his own small business, reaching out to people he knew and recommending his friend.  Mr. Jun Isogai, the owners of B.O.S. restaurant in Little Tokyo writes as follows: "The distributors informed me that they were delighted to help me because

14

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

they all respected and enjoyed working with Mr. Yamamoto, for his humility, loyalty and kindheartedness throughout the many years he had been working with them." (Exhibit 7, Ltr. from J. Isogai.)  Similarly, Mr. Kiwamu Katayama, the supervisor of the Lazy Ox Canteen, writes to the Court as follows: "When I first came to the US, he helped me establish myself in the restaurant business, he was my mentor and guide and without him I would not have been successful personally or professionally." (Exhibit 18, Ltr. from K. Katayama.)

### 6.      The Instant Offense Is Out-Of-Character for Mr. Yamamoto.

Mr. Yamamoto's friends, coworkers and community members know him as an honest and law abiding person.  Mr. Kevin Bachus writes to the Court as follows: "I so strongly believe that conduct contrary to the law is so completely out-of-character from what I have seen, heard from and learned about Mr. Yamamoto over the years, that I felt compelled to write to [the Court]." (Exhibit 1, Ltr. from M. Bachus.)  These same sentiments are echoed in the letters from other friends, coworkers and community members.  "I sincerely believe Yama to be an honorable man and my interactions with him have not seen or heard anything that would make me feel otherwise." (Exhibit 3, Ltr. from R. Chutuape.)

Close family friend Mr. Peter Kahane writes to the Court as follows:  "The charge against him is, in my experience, uncharacteristic of Mr. Yamamoto and one which I believe he sincerely and genuinely regrets . . . .  I understand that this has been a source of intense, regret, shame and embarrassment." (Exhibit 11, Ltr. from P. Kahane.)

In his present position, he is extremely careful to comply with all regulations regarding the import and sale of seafood.  "He knows that some items can't be made in the U.S.  He honestly explains [to customers] there are import/export regulations for such items." (Exhibit 22, Ltr. from K. Phillips.)

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

**C.     Need to Avoid Unwarranted Sentencing Disparities.**

One of the factors for the Court's consideration under 18 U.S.C. section 3553(a) is the need to avoid unwarranted sentencing disparity.  18 U.S.C. § 3553(a)(6).  While this factor typically relates to preventing disparity among defendants with similar records who have been convicted of similar conduct on a national level, this Court may consider codefendant disparity when determining a reasonable sentence.  *United States v. Conatser*, 514 F. 3d 508, 521 (6th Cir. 2008) (district court could, but was not required to, consider disparity between codefendants); *United States v. Frias,* 521 F.3d 229 (2nd Cir. 2008) (finding district court's consideration of codefendant disparity in sentencing appropriate); *Lazenby*, 439 F.3d at 945 (unwarranted sentencing disparities between codefendants fails to serve the legislative intent of section 3553(a)(6).).

Mr. Yamamoto requests that the Court consider the Plea Agreements and the stipulated guideline sentencing ranges of two significantly more culpable defendants.  Initially, and primarily, Mr. Yamamoto requests that the Court consider the fact that Mr. Vidor has stipulated in his Plea Agreement to an offense level of six, was sentenced to one year of probation and was not ordered to perform any community service.

As recognized by the probation officer, "[i]n this instance, the most culpable participant appears to be Vidor, the owner of The Hump . . . . the purchase was authorized and paid for by Vidor . . . . Vidor, by virtue of owning The Hump, received any profits earned by the sale of the whale meat."  (PSR, ¶ 43.)  Pursuant to his Plea Agreement, however, Mr. Vidor was not charged with the conspiracy that forms the factual basis of this Information, and was not required to stipulate to the sale of an endangered species, which added four levels to Mr. Yamamoto's guideline calculation.

In addition, Mr. Vidor did not agree to recommend any community service as part of his sentence and he was not ordered to perform any as a condition of his

probation.   For Mr. Yamamoto, the 200 hours he is recommending to the Court is a true hardship.  He works literally from dawn to dawn with only a brief period of time in the afternoon to rest.  He is lucky to get four hours of sleep a day.  To find time to complete 200 hours of community service, while being responsible for every aspect of running the restaurant, will be an incredible challenge and a challenge that the more culpable Mr. Vidor has not agreed to face.

Mr. Ohira is also more culpable that Mr. Yamamoto.  He ordered the meat from a Japanese supplier and imported it into the United States.  (PSR, ¶ 18.) Mr. Ohira has pled to a single count misdemeanor information.  (Ohira Plea Agreement.)  He was not required, as a condition of his Plea Agreement, to stipulate to a four-level enhancement for sale of an endangered species although it is undisputed that he sold the Sei whale at issue to The Hump.

Mr. Ohira cooperated early and was likely instrumental to the government's case.   His cooperation, however, should be reflected in a 5K1.1 departure and not in the applicable guideline enhancements.

Mr. Yamamoto respectfully requests that the Court consider the Plea Agreements of these two more culpable participants and their anticipated guideline level of six and grant him a variance to allow him to receive the same offense level.

**D.    A Sentence of Probation Is Sufficient to Achieve the Goals of Sentencing.**

The goals of sentencing are to provide just punishment, afford adequate deterrence, protect the public and provide Mr. Yamamoto effective correctional treatment.  *See* 18 U.S.C. § 3553(a)(2)(A)-(D).  A sentence of one year of probation, 200 hours of community service and a $5,000 fine is sufficient to meet the goals of sentencing.  The probation officer recommends a two-year period of probation. Mr. Yamamoto, however, has consistently continued the sentencing in this matter to accommodate the government and to be fully available to cooperate in case the matter against the co-conspirators went to trial.  Thus, he has been on pretrial release since March 14, 2013.  In consideration of the fact that this matter has been ongoing

17

130449.2

1   for one-year and nine months and Mr. Yamamoto has had no other issues or

2   concerns, he respectfully requests that the Court sentence him to only one year of

3   probation.

4   　　　As demonstrated by the character letters to the Court, the instant offense is

5   out-of-character for Mr. Yamamoto who is a hardworking, small business owner

6   with a reputation for honesty.  Mr. Yamamoto respectfully requests that the Court

7   find that a term of one year probation with a condition of 200 hours of community

8   service is sufficient to meet the sentencing objectives of deterrence and punishment.

9   Mr. Yamamoto also recommends that the Court impose a $5,000 fine.

10   　　　　　　　　　　**VI.   CONCLUSION.**

11   　　　Based upon the foregoing, and considering the full range of factors,

12   Mr. Yamamoto respectfully requests that the Court sentence him to a term of one

13   year of probation, 200 hours of community service and impose a $5,000 fine.

14

15   Dated: May 1, 2015　　　　　　　ISAACS FRIEDBERG & LABATON

16

17   　　　　　　　　　　　　By:   /S_____

18   　　　　　　　　　　　　　　　Amanda R. Touchton
　　　　　　　　　　　　　　　　Attorneys for Kiyoshiro Yamamoto

19

20

21

22

23

24

25

26

27

28

18
**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2

## DECLARATION OF AMANDA R. TOUCHTON

I, Amanda R. Touchton, declare as follows:

1.      I am an attorney licensed to practice law in the State of California and counsel of record for Kiyoshiro Yamamoto in the above titled case.

2.      Mr. Yamamoto cooperated extensively with the government.  On September 26, 2013, before he entered a plea in this matter, he attended a multi-hour proffer session with Assistant United States Attorney Dennis Mitchell and the investigating agents.

3.      Subsequent to his plea, on February 27, 2014, Mr. Yamamoto attended a second, multi-hour proffer session with the government attorney and agents.

4.      At his multiple proffer sessions, Mr. Yamamoto provided extensive information about other more culpable participants, such as Mr. Vidor, Mr. Schaefer and The Hump.  He was also very forthcoming about his own involvement and his own participation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Signed this 1st day of May 2015 in Los Angeles, California.


_____/s_____
Amanda R. Touchton

**DEFENDANT YAMAMOTO'S SENTENCING POSITION**

130449.2